## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TOMMIE PUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NUMBER |
| v. | ) | _____ |
| | ) | |
| MELIDA RAMIREZ and | ) | JURY TRIAL DEMANDED |
| NATIONAL COIN & BULLION | ) | |
| RESERVE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW by counsel your plaintiff, Tommie Puckett (hereafter "Plaintiff" or "Puckett") and files her Complaint against defendant Nationwide Coin & Bullion Reserve, Inc. (hereafter "Nationwide"), its sole Director, Melida Ramirez, (hereafter "Ramirez"), (jointly, severally, and collectively hereafter "Defendants"), and their unknown agent, JOHN DOE,[1] for common law and consumer fraud in the sale of coins to the more than 90-year old, widowed elder, shows as follows:

---

[1] Plaintiff does *not* make agent JOHN DOE a defendant in this action.

1.

Plaintiff invokes this Court's diversity jurisdiction to raise claims in equity, fraud and deception against the Defendants under Georgia's common law, its Fair Business Practices Act, OCGA §§ 10-1-390 *et seq.*, (hereafter "FBPA") and its Unfair or Deceptive Practices Toward the Elderly Act, OCGA §§ 10-1-850 *et seq.*, (hereafter "UDPTEA").

## I — Parties

## A. Plaintiff

2.

At all times relevant to this Complaint, Plaintiff is, and was, a natural person; and, a widow.

3.

At all times relevant to this Complaint, Plaintiff is, and was, over ninety years of age.

## B. Defendants

4.

At all times relevant to this Complaint, Defendant NATIONWIDE is, and was, a business organized and established for profit in the State of Texas under the Texas Business Corporation Act.

5.

At all times relevant to this Complaint, Defendant NATIONWIDE's principal office and headquarters is, and was, located at 2470 S. Dairy Ashford Road, Suite 282, in the City of Houston, State of Texas.

6.

At all times relevant to this Complaint, Defendant NATIONWIDE's sole director at 2470 S. Dairy Ashford Road, Suite 282, in the City of Houston, State of Texas is, and was, Melida Ramirez.

7.

At all times relevant to this Complaint, Defendant Melida Ramirez directed, controlled, and/or coordinated the activities of Defendant NATIONWIDE from 2470 S Dairy Ashford Road, Suite 282, in the City of Houston, State of Texas.

8.

Defendant NATIONWIDE's registered agent for service of process is Mark Dykes.

9.

The registered office of Mark Dykes is located at 3203 Underwood, Houston, Texas 77025.

10.

Defendant NATIONWIDE is not authorized by the Secretary of State of Georgia to conduct business in Georgia.

11.

Defendant Melida Ramirez is a natural person.

12.

Defendant Melida Ramirez may be served at her residence address shown upon the summons prepared and herewith filed or at her above office address.

13.

At all times relevant to this Complaint, Defendant NATIONWIDE and Defendant Ramirez, acting as principals, acted by and through the services of an agent whose identity, residency, domicile, and citizenship is not known at this time to the Plaintiff.

14.

Plaintiff may, for purposes of this Complaint, refer to the said agent as JOHN DOE.

15.

Defendant Melida Ramirez and Defendant NATIONWIDE may hereafter jointly, severally, and collectively be referred to in this Complaint as "Defendants".

## II — Jurisdiction and Venue[2]

### A. Diversity Jurisdiction

16.

Plaintiff invokes the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

17.

The amount in controversy exceeds $75,000.00.

18.

At all times relevant to this Complaint, Plaintiff is and was domiciled in, and a resident of, Fulton County, Georgia.

19.

At all times relevant to this Complaint, Plaintiff is and was a citizen of the State of Georgia.

20.

At all times relevant to this Complaint, Defendant NATIONWIDE is and was a citizen of the State of Texas.

---

[2] See *Wylie v Red Bull North America, Inc*., unpublished opinion, Eleventh Circuit Case No. 15-11600 (September 21, 2015).

21.

At all times relevant to this Complaint, Defendant Melida Ramirez is and was domiciled within the State of Texas.

22.

At all times relevant to this Complaint, Defendant Melida Ramirez is and was a citizen of the State of Texas.

## B. Venue

23.

Venue lies with this Honorable Court because the Plaintiff is domiciled in, and is a resident of, Fulton County, Georgia; because the communications, representations, and acts that induced the herein below alleged contracts, and caused the damages to Plaintiff herein below alleged, occurred within the geographic boundaries of the Northern District of Georgia, Atlanta Division.

## III — Legal Environment

24.

Georgia law affords enhanced protections to classes of persons whom the General Assembly recognized as peculiarly vulnerable and susceptible to fraud and deceit; and, among these classes, are elders and consumers.

25.

Georgia statutes enhance protection against fraud and deceit by limiting, in different degrees for the different classes of persons, the doctrine of caveat emptor; and, by enhancing remedies and damages in different degrees for the different classes.

## A. The Unfair or Deceptive Practices Toward the Elderly Act

26.

The Unfair or Deceptive Practices Toward the Elderly Act, OCGA §§ 10-1-850 *et seq*. ("UDPTEA") affords a higher level of protection to elders because the Georgia General Assembly recognized that an elder may be more vulnerable to a defendant's conduct because of age than other persons and because such persons may suffer substantial emotional and economic damage more easily than others when an unscrupulous defendant exploits the elder's economic resources.  See OCGA § 10-1-852.[3]

27.

UDPTEA, to enhance protections for the elderly, provides in addition to other civil penalties and damages:  (a) up to an additional $10,000 per violation in

---

[3] ". . . the court shall consider the extent to which . . . the person was more vulnerable to the defendant's conduct because of age . . . and whether the elder person actually suffered substantial . . . emotional, or economic damage resulting from the defendant's conduct."

civil penalty;[4] and, (b), access to punitive damages, restitution, and reasonable attorneys fees.  OCGA § 10-1-853.

28.

UDPTEA defines an "Elder person" to mean "a person who is 60 years of age or older.  OCGA § 10-1-850(2).

29.

Plaintiff is an elder as defined by UDPTEA, OCGA § 10-1-850(2), because at all time relevant to this Complaint, Plaintiff was aged ninety-years or older.

30.

Plaintiff, because she is a victim of a Defendants' violation(s) of the Fair Business Practices Act is entitled to all the special protections of the UDPTEA. See OCGA § 10-1-851.

**B. The Fair Business Practices Act**

31.

The Fair Business Practices Act, OCGA § 10-1-390 et seq., ("FBPA") affords a higher level of protection to consumers than common law afforded to them because it recognizes both (a) that consumers are peculiarly vulnerable to unfair or deceptive practices in the conduct of trade and commerce; and, (b) that

---

[4] OCGA § 10-1-851.

businesses that use unfair or deceptive techniques obtain an unfair competitive advantage over those businesses which do not use such techniques.  See OCGA § 10-1-391(a).

32.

The Georgia FBPA prohibits unfair and unconscionable conduct, in addition to deception, in consumer transactions: the purpose of the FBPA is "to protect consumers and legitimate business enterprises from unfair or deceptive practices." OCGA § 10-1-391(a).

33.

Accordingly, the General Assembly directs courts to interpret and construe the FBPA consistently with the interpretations given by the Federal Trade Commission ('FTC') and federal courts to the Federal Trade Commission Act, as amended. OCGA § 10-1-391(b).

34.

In the absence of clearly established Georgia standards, this court should follow the FTC and federal court interpretation of the Federal Trade Commission Act when interpreting and construing the Georgia FBPA.  Id.

35.

Thus, a defendant by taking advantage of disparate knowledge and/or vulnerabilities of age commits an unfair consumer business practice and violates the FBPA.[5]

36.

The FBPA affords remedies to consumers in addition to all other remedies available to them; OCGA § 10-1-407 provides:

> This part is cumulative with other laws and is not exclusive.  The rights or remedies provided for in this part shall be in addition to any other procedures, rights, remedies, or duties provided for in any other law or in decisions of the courts of this state dealing with the subject matter.

37.

The FBPA provides for civil penalties up to $25,000.00 per violation and, in the case of a continuing violation, each day that a violation persists may be regarded as a separate violation.  OCGA § 10-1-405.

38.

The FBPA provides for the recovery of general and exemplary damages and for equitable relief.  OCGA § 10-1-399(a).

---

[5] See, generally, National Consumer Law Center, *Unfair and Deceptive Acts and Practices* (9th ed. 2016), updated at www.nclc.org/library, §§ 4.3, 4.4.

39.

Whenever a consumer establishes that the defendant committed an intentional violation, the FBPA provides for treble actual damages. OCGA § 10-1-399(c).

40.

The FBPA also provides that whenever any violation was established, and irrespective of the amount in controversy, the consumer shall be awarded reasonable attorneys fees and costs of litigation.

41.

The violations of the FBPA that Plaintiff alleges below have, in addition to injuring herself, harmed the consumer market place in general since Defendants' deception and unfair conduct deprived legitimate dealers who do not use unfair or deceptive practices of her business in a measurable dollar amount.

42.

Plaintiff delivered to Defendants the *ante litem* demand required by OCGA § 10-1-399(b) and defendants did not respond to it. Said demand letter is attached hereto as Exhibit H.

## C. Georgia's Common Law of Fraud and Deceit

43.

Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party.  OCGA § 51-6-1

44.

A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.  OCGA § 51-6-2(b).

45.

Concealment of a material fact when done in such a manner as to deceive and mislead supports an action for fraud.  OCGA § 51-6-2(a).

46.

The elements of fraud and deceit are (1) a false representation made by the defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting in reliance upon the plaintiff; (4) justifiable reliance by the plaintiff; and, damage to the plaintiff.

## IV — Facts

## A. How Defendant Obtained and Lost Plaintiff's Trust

47.

Defendant secured Plaintiff's trust in 2014 when its agent JOHN DOE contacted her, introduced coins to her as a solid, short-term investment opportunity, and sold to her coins in 2014, promising that the value of the coins would increase in the short term.

48.

The following year, Defendant's agent again contacted Plaintiff to inform her about two-hundred, newly minted, coins that, he said, would double in value within a year because so few had been made.

49.

At the time the Defendant's agent made the representations to Plaintiff pertaining to the coins' expected appreciation in value, he knew the representations were false and misleading because he planned to sell the coins to Plaintiff at inflated prices, and, concealing his plan from the Plaintiff, sold the coins to her at seriously, materially, significantly and greatly inflated prices.

50.

After making the sales of the coins to Plaintiff at the seriously, materially, significantly, and/or greatly inflated prices, the agency of JOHN DOE with the Defendants ended.

51.

After JOHN DOE's agency with the Defendant ended, the agent who in 2014 and 2015 had sold the coins for and on behalf of the Defendants to the Plaintiff informed the Plaintiff that he could sell coins to Plaintiff at prices significantly, materially, substantially and/or greatly reduced from the prices at which Defendants had previously sold the coins to the Plaintiff.

52.

Plaintiff informed the Defendant about the communication she received from JOHN DOE and asked Defendants to rescind the below alleged transactions.

53.

Defendant refused to rescind the below alleged transactions.

## B. The October 7, 2014, Coin Sale and Purchase

54.

The Defendant's agent, on or about October 7, 2014, sold to Plaintiff for a price of $2,995.00 a coin that the agent represented to Plaintiff was a Proof 69, 1984, commemorative Olympic Runner gold coin with a $10 face value.

55.

Exhibit A hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 120048.

56.

Defendant's Invoice Number 120048, Exhibit A hereto annexed, contains additional representations regarding the October 7, 2014, coin sale and purchase transaction and pertaining to the coin which is therein described and identified.

57.

All the representations that Defendant made in the Defendant's Invoice Number 120048, Exhibit A hereto annexed, are by this reference incorporated as if fully set forth here.

58.

Plaintiff paid cash in advance for the October 7, 2014, coin purchase.

59.

Plaintiff received the invoice marked "PAID" with the coin after agreeing to purchase the coin and paying for the coin.

60.

The actual value fair market value of the coin that was the subject of the October 7, 2014, sale and purchase transaction described in Exhibit A was, at wholesale $600.00; and, at retail, $650.00.

61.

The difference between what Plaintiff paid at retail for the coin in the October 7, 2014, transaction and their actual retail value on that date is $2,345.00.

**C. The November 20, 2014, Coin Sale and Purchase**

62.

The Defendant's agent, on or about November 20, 2014, sold to Plaintiff for a price of $3,995.00 a coin that the agent represented to Plaintiff was a year 2000, "Proof 69," Library of Congress commemorative $10 United States coin.

63.

Exhibit B hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 121143.

64.

The Defendant's Invoice Number 121143 contains additional representations pertaining to the November 20, 2014, coin sale and purchase transaction and the coin which is therein described and identified.

65.

All the representations that Defendant made in the Defendant's Invoice Number 121143, the Exhibit B hereto annexed, are by this reference incorporated as if fully set forth here.

66.

Plaintiff paid cash in advance for the October 7, 2014, coin purchase.

67.

Plaintiff received the invoice marked "PAID" with the coin after agreeing to purchase the coin and paying for the coin.

68.

The actual value fair market value of the coin that was the subject of the November 20, 2014, sale and purchase transaction described in Exhibit B was, at wholesale $750.00; and, at retail, $800.00.

69.

The difference between what Plaintiff paid at retail for the coin in the November 20, 2014, transaction and their actual retail value on that date is $3,195.00.

### D. The November 25, 2014, Coin Sale and Purchase

70.

The Defendant's agent, on or about November 25, 2014, sold to Plaintiff for a price of $3,995.00 a coin that the agent represented to Plaintiff was a year 2000, "Proof 69," Library of Congress commemorative $10 United States coin; and two (2) $1 face value silver American bullion coins, without charge.

71.

Exhibit C hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 121282.

72.

The Defendant's Invoice Number 121282 contains additional representations pertaining to the November 25, 2014, coin sale and purchase transaction and pertaining to the coin which is therein described and identified.

73.

All the representations that Defendant made in Defendant's Invoice Number 121282, the Exhibit C hereto annexed, are by this reference incorporated as if fully set forth here.

74.

Plaintiff paid cash in advance for the November 25, 2014, coin purchase.

75.

Plaintiff received the invoice marked "PAID" with a coin that was different from the invoice description, after agreeing to purchase the coins and paying for the coins.

76.

Plaintiff actually received a 1897 $10 Gold Liberty MS 62 coin, the actual fair market value of which was, at wholesale 625.00; and, at retail, $700.00.

77.

The actual fair market value of the coins that Defendant gifted to Plaintiff in the November 25, 2014, sale and purchase transaction described in Exhibit C was, at wholesale, $16.00 for the American Silver Eagle and $18.00 for the Silver Buffalo; and, respectively, at retail value, $19.00 and $22.00.

78.

The difference between what Plaintiff paid at retail for the Library of Congress commemorative coin in the November 25, 2014, transaction and its actual retail value on that date is $3,295.00.

### E. The September 18, 2015, Coin Sale and Purchase

79.

Defendant's agent, on or about September 18, 2015, sold to Plaintiff at the price of $7,995.00 each, for a total sale price of $15,990.00, two (2) $100 American Liberty coins that he represented to Plaintiff were "Limited Edition," "First Strike," and "High Relief" gold coins made in 2015.

80.

Exhibit D hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 128442.

81.

The Defendant's Invoice Number 128442, Exhibit D hereto annexed, contains additional representations regarding the September 18, 2015, coin purchase and sale transaction and pertaining to the coins which are therein described and identified.

82.

All the representations that Defendant made in the Exhibit D hereto annexed are by this reference incorporated as if fully set forth here.

83.

Plaintiff paid cash in advance for the September 18, 2015, coin purchase.

84.

Plaintiff received the invoice marked "PAID" with the coin after agreeing to purchase the coin(s) and paying for the coin(s).

85.

The actual fair market value of the coins that were the subject of the September 18, 2015, sale and purchase transaction described in Exhibit D was, for a single coin, at wholesale $1,900.00; and, at retail, $2,200.00.  The total wholesale fair market value for the two coins was $3,800.00.   The total retail fair market value for the two coins was $4,400.00.

86.

The difference between what Plaintiff paid at retail for the two coins in the September 18, 2015, transaction and their actual retail value on that date is $11,590.00.

### F. The September 22, 2015, Coin Sale and Purchase

87.

Defendant's agent, on or about September 22, 2015, sold to Plaintiff at the price of $7,995.00 each, for a total sale price of $15,990.00, two (2) additional American Liberty coins that he represented to Plaintiff were "Gold," "Limited Edition," "First Strike," and "High Relief" coins.

88.

Exhibit E hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 128496.

89.

The Defendant's Invoice Number 128496, Exhibit E hereto annexed, contains additional representations regarding the September 22, 2015, coin sale and purchase transaction and pertaining to the coins which are therein described and identified.

90.

All the representations that Defendant made in the Exhibit E hereto annexed are by this reference incorporated as if fully set forth here.

91.

Plaintiff paid cash in advance for the September 22, 2015, coin purchase.

92.

Plaintiff received the invoice marked "PAID" with the coin after agreeing to purchase the coins and paying for the coins.

93.

The actual fair market value of the coin that was the subject of the September 22, 2015, sale and purchase transaction described in Exhibit E was, for a single coin, at wholesale $1,900.00; and, at retail, $2,200.00.  The total wholesale fair market value for the two coins was $3,800.00.   The total retail fair market value for the two coins was $4,400.00.

94.

The difference between what Plaintiff paid at retail for the coins in the September 22, 2015, transaction and their actual retail value on that date is $11,590.00.

**G. The October 16, 2015, Coin Sale and Purchase**

95.

Defendant's agent, on or about October 16, 2015, sold to Plaintiff, for a price of $5,500.00, one $50 American Eagle coin that he represented to Plaintiff was "Gold", "Proof 70", and made in 1988.

96.

Exhibit F hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 129624.

97.

Defendant's Invoice Number 129624, Exhibit F hereto annexed, contains additional representations pertaining to the October 16, 2015, coin sale and purchase transaction and pertaining to the coin which is therein described and identified.

98.

All the representations that Defendant made in the Exhibit F hereto annexed are by this reference incorporated as if fully set forth here.

99.

Plaintiff paid cash in advance for the October 16, 2015, coin purchase.

100.

Plaintiff received the invoice marked "PAID" with the coin after agreeing to purchase the coin and paying for the coin.

101.

The actual value fair market value of the coin that was the subject of the October 16, 2015, sale and purchase transaction described in Exhibit F was, at wholesale $1,525.00; and, at retail, $1,700.00.

102.

The difference between what Plaintiff paid at retail for the coin in the October 16, 2015, transaction and their actual retail value on that date is $3,800.00.

**H. The Second October 16, 2015, Coin Sale and Purchase**

103.

Defendant's agent, on or about October 16, 2015, sold to Plaintiff, for a price of $3,995.00, one $25 American Eagle coin that he represented to Plaintiff was a "Proof 69," "Gold," coin made in 1988.

104.

Exhibit G hereto annexed is a copy, true and correct in all relevant respects, of the Defendant's Invoice Number 129628.

105.

The Defendant's Invoice Number 129628, Exhibit G hereto annexed, contains additional representations pertaining to the October 16, 2015, coin sale

and purchase transaction and pertaining to the coin which is therein described and identified.

106.

All the representations that Defendant made in the Exhibit G hereto annexed are by this reference incorporated as if fully set forth here.

107.

Plaintiff paid cash in advance for the second October 16, 2015, coin purchase.

108.

Plaintiff received the invoice marked "PAID" with the coin after agreeing to purchase the coin and paying for the coin.

109.

The actual value fair market value of the coin that was the subject of the October 16, 2015, sale and purchase transaction described in Exhibit G was, at wholesale $750.00; and, at retail, $800.00.

110.

The difference between what Plaintiff paid at retail for the coin in the second October 16, 2015, transaction and their actual retail value on that date is $3,195.00.

## COUNT 1 - COMMON LAW FRAUD

111.

By this reference Plaintiff incorporates here as if fully set forth the allegations above pertaining to the parties, ¶¶ 2-15; diversity, ¶¶ 16-22; venue, ¶ 23; and the facts, ¶¶ 48 - 111.

112.

Defendants intentionally, knowingly, and/or recklessly inflated the retail price for the coins as alleged above by instructing and or requiring John Doe to quote the inflated price to the Plaintiff for the coins.

113.

Defendants intentionally, knowingly, and/or recklessly concealed from Plaintiff the fair retail market value for the coins, as alleged above.

114.

Defendants intentionally, knowingly, and/or recklessly inflated the retail price for the coins as alleged above for the purpose of concealing from Plaintiff their fair retail market value.

115.

Defendants intentionally, knowingly, and/or recklessly concealed from Plaintiff the fair retail market value of the coins, as alleged above, in order to take

from Plaintiff the expected appreciation in value belonging to the coins, knowing that in so doing Defendants would deprive Plaintiff of the increase in value John Doe had advised Plaintiff to expect from the coins.

116.

Defendants concealed the fair retail market value of the coins, as alleged above, in order to induce Plaintiff to purchase the coins from Defendants and to deceive Plaintiff about real value of the coins as an investment vehicle.

117.

An elder consumer suffering from the infirmities of age, Plaintiff justifiably relied upon the Defendants' agent, John Doe, for investment advice and for advice regarding the fair retail market value of the coins.

118.

Defendants by and through its agent, John Doe, succeeded in deceiving the Plaintiff who relied upon John Doe, when Plaintiff agreed to purchase the coins from the Defendants.

119.

Defendant actually damaged the Plaintiff in the amounts alleged above as the difference between the amount that she paid for the coins and the actual fair

retail market value of the coins, an amount to be determined by a jury of Plaintiff's peers that totals not less than $39,010.00.

### 120.

Plaintiff did not discover the misrepresentation and deception until informed thereof by John Doe about a year after purchasing the coins from the Defendants.

### 121.

Plaintiff, because of her infirmity of age, was unable independently to discover the deception until John Doe informed her of it.

## **COUNT 2 - FBPA**

### 122.

By this reference Plaintiff incorporates here as if fully set forth the allegations above pertaining to the parties, ¶¶ 2-15; diversity, ¶¶ 16-22; venue, ¶ 23; and the facts, ¶¶ 48 - 111.

### 123.

By this reference Plaintiff incorporates here as if fully set forth the allegations above pertaining the common law fraud, ¶¶ 113-122.

### 124.

Defendants intentionally violated the FBPA by misrepresenting to the Plaintiff the investment quality of the coins.

125.

Defendants intentionally violated the FBPA by misrepresenting to the Plaintiff the fair market retail value of the coins.

126.

Defendants intentionally violated the FBPA by misrepresenting to the Plaintiff the expected appreciation in value for the coins.

127.

Defendants intentionally violated the FBPA by unfairly taking advantage of their superior knowledge about the investment quality of the coins, the fair market retail value of the coins, and the expected appreciation in value for the coins.

128.

Defendants intentionally violated the FBPA by unfairly taking advantage of the Plaintiff's ignorance about investment grade coins, their fair retail market value, and their expected appreciation in value.

129.

As described above, Defendants intentionally violated the FBPA causing actual damage to the Plaintiff in the amounts alleged above as the difference between the amount that she paid for the coins and the actual fair retail market

value of the coins, an amount to be determined by a jury of Plaintiff's peers that totals not less than $39,010.00.

### 130.

Because the Defendants acted intentionally and in reckless and callous disregard of the state of the Plaintiff's knowledge, unfairly taking advantage of their superior knowledge with regard to investment grade coins, their fair retail market value, and their expected appreciation in value and her ignorance of the same, Plaintiff is entitled to recover from Defendants, in addition to all other remedies, exemplary damages in amounts to be determined by the informed conscience of a jury of Plaintiff's peers.

### 131.

Because the Defendants acted intentionally to unfairly take advantage of their superior knowledge with regard to investment grade coins, their fair market value, and their expected appreciation in value and Plaintiff's ignorance of the same, Plaintiff is entitled to recover from Defendants, in addition to all other remedies, three times the amount of her actual damages as determined by a jury of her peers.

132.

Because Plaintiff acts as a private attorney general in connection with her claims under the FBPA, Plaintiff is entitled to recover from Defendants, in addition to all other remedies, civil penalties in an amount up to $25,000 per violation.

133.

Plaintiff is entitled under the FBPA to recover her reasonable attorneys fees and expenses of litigation.

## COUNT 3 - UDPTEA

134.

By this reference Plaintiff incorporates here as if fully set forth the allegations above pertaining to the parties, ¶¶ 2-15; diversity, ¶¶ 16-22; venue, ¶ 23; and the facts, ¶¶ 48 - 111.

135.

By this reference Plaintiff incorporates here as if fully set forth the allegations above pertaining the common law fraud, ¶¶ 113-122.


By this reference Plaintiff incorporates here as if fully set forth the allegations above pertaining to Defendants' violations of the FBPA, ¶¶ 123-134.

136.

Defendants intentionally violated the FBPA by unfairly taking advantage of the Plaintiff's age and the infirmities of her age.

137.

Defendants intentionally sought by and through their violations of the FBPA to deprive the Plaintiff of her retirement benefits, savings, and income.

138.

Because Defendants violated the UDPTEA in its effort to take from Plaintiff her retirement benefits, savings, and income, Defendants are liable to Plaintiff for punitive damages in amounts to be established by the informed conscience of a jury of Plaintiff's peers.

139.

Because Plaintiff acts as a private attorney general in the prosecution of her claims under the UDPTEA, Defendants are liable for a civil penalty up to $10,000 for each FBPA violation.

140.

Because Defendants violated the UDPTEA, Defendant is liable to Plaintiff for her reasonable attorneys fees and expenses of litigation.

## COUNT 4 - PUNITIVE DAMAGES

141.

By this reference Plaintiff incorporates here as if fully set forth the allegations contained above in ¶¶ 1-141.

142.

The acts and failures to act of the Defendants demonstrate willful misconduct, malice, fraud, recklessness, wantonness, oppression, or such entire want of care as would raise the presumption of conscious indifference to consequences, for which Plaintiff seeks punitive damages pursuant to OCGA 51-12-5.1 in amounts which can be established only by the enlightened conscience of a jury of the Plaintiff's peers.

WHEREFORE your Plaintiff prays for judgment against the Defendants:

   a.  An award of actual damages not less than $39,010;

   b.  An award pursuant to the FBPA of $39,010 in actual damages, plus exemplary damages in an amount to be determined by a jury of Plaintiff's peers;

   c.  An award pursuant to the FBPA of $117,030 as treble damages because of Defendants' intentional violations of the FBPA;

d.  An award pursuant to the FBPA up to $25,000 in civil penalties for each FBPA violation;

e.  An award pursuant to the FBPA of Plaintiff's reasonable attorneys' fees and expenses of litigation;

f.  An award pursuant to the UPDTEA for her additional damages and punitive damages, for intentionally violating the FBPA by unfairly taking advantage of the Plaintiff's age, in an amount to be determined by the enlightened conscience of a jury of Plaintiff's peers;

g.  An award pursuant to the UPDTEA of an additional $10,000 for each separate violation of the FBPA;

h.  An award pursuant to the UPDTEA of Plaintiff's reasonable attorneys' fees and expenses of litigation;

i.  An award of punitive damages, an amount to be determined by the informed and enlightened conscience of a jury of the Plaintiff's peers; and

j.  For such other and further regulatory, statutory, legal, injunctive, equitable and other relief as this Honorable Court deems meet, just, and proper under all the circumstances of this case.

Respectfully submitted, this 8th day of August, 2017.

**HURT STOLZ, P.C.**

s/  James W. Hurt, Jr.

James W. Hurt, Jr.

Georgia Bar No.:  380104

345 West Hancock Avenue
Athens, Georgia 30601
(706) 395-2750
Facsimile:  (866) 766-9245
jhurt@hurtstolz.com

**ADDELTON LTD CO.**

s/  David F. Addleton

By:  David F. Addleton

Georgia Bar No.  005050

355 Cotton Avenue
Macon, Georgia 31201
Telephone: (404) 797-7166
Facsimile: (888) 398-0898
dfaddleton@gmail.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B).  The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14 point font.

Respectfully submitted, this 8th day of August, 2017.

**HURT STOLZ, P.C.**

s/  James W. Hurt, Jr.
James W. Hurt, Jr.
Georgia Bar No.:  380104

345 West Hancock Avenue
Athens, Georgia 30601
(706) 395-2750
Facsimile:  (866) 766-9245
jhurt@hurtstolz.com                    **ATTORNEY FOR PLAINTIFF**